## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

WESTCHESTER SURPLUS LINES
INSURANCE COMPANY; ILLINOIS
UNION INSURANCE COMPANY,

     Plaintiffs,

v.

                                  CASE NO:

SUMMERS FIRE SPRINKLERS, INC.;
LATITUDE ON THE RIVER
CONDOMINIUM ASSOCIATION, INC.

     Defendant.

_____/

## COMPLAINT FOR DECLARATORY RELIEF

WESTCHESTER SURPLUS LINES INSURANCE COMPANY and ILLINOIS UNION INSURANCE COMPANY (individually, "WSLIC" and "ILU," and collectively, "Chubb") file suit against SUMMERS FIRE SPRINKLERS, INC. ("Summers") and LATITUDE ON THE RIVER CONDOMINIUM ASSOCIATION, INC. (the "Association"), and allege:

## NATURE OF ACTION

1.     This is an action for declaratory relief under 28 U.S.C. § 2201 for a determination that there is no coverage under several Chubb commercial general liability policies because, among other reasons, there is no coverage for "property damage" that occurs outside the policy periods, and Summers had prior knowledge of "property damage" before some of the policy periods.

## JURISDICTION AND VENUE

2.     Jurisdiction exists under 28 U.S.C. § 1332 because there is complete diversity of citizenship and the amount in controversy exceeds $75,000, exclusive of attorney's fees, interest, and costs.

3.     Venue is proper in this district because the underlying damage occurred in this district and the underlying action is pending in this district. 28 U.S.C. § 1391(b) (1) and (2).

4.     All conditions precedent have occurred, been performed, or have been waived.

## THE PARTIES

5.     WSLIC is a Georgia corporation with its principal place of business in Pennsylvania. ILU is an Illinois corporation with its principal place of business in Pennsylvania. WSLIC and ILU are a part of the Chubb Group of Companies.

6.     Summers is a Delaware corporation with its principal place of business in Ohio.

7.     The Association is a Florida corporation with its principal place of business in Florida.

## COMMON ALLEGATIONS

**The Latitude Condominium Project**

8.     Miami Riverfront Partners, LLC ("MRP") was the developer of the Latitude Condominium, a luxury condominium project located in Miami, Florida.

9.     On 01/06/2005, MRP contracted with Suffolk Construction Company, Inc. ("Suffolk") to serve as the general contractor for the project.

10.     On 02/11/2005, Suffolk subcontracted with Summers to provide and install a fire protection system in the condominium.

11.     On 01/12/2011, MRP turned over control of the condominium to the Association.

**The Chapter 558 Notice of Claim**

12.     On 09/30/2011, the Association sent Summers a Notice of Claim pursuant to Fla. Stat., Chapter 558. (*See* Notice of Claim, attached as Exhibit "A.")

13.     The Association explained this notice was "a formal demand that [Summers] correct all defects" in the condominium.

14.     In support, the notice referenced an expert report prepared by SEA, Ltd., dated 09/21/2011. (*See* SEA Report, attached as Exhibit "B.") According to the Association, this report "identif[ied] various construction defects, in reasonable detail, that have been discovered to exist to date."

15.     The SEA, Ltd. report, which was attached to the notice, further explained:

On March 23, 2011, SEA, Ltd. was asked to investigate a water leak that occurred on March 18, 2011, at the Latitude on the River Condominium[.] On that date, a section of fire sprinkler piping in a utility closet in Unit 2710 failed and leaked water. The stream of water cut through nearby drywall and distributed water into other spaces on the 27th floor. The leaked water caused damage to the contents and interior furnishings of this and other residences, as well as common areas in the building.

16.     After completing its investigation, SEA, Ltd. reached the following conclusions:

☐ The leaks occurred due to cracks in the CPVC pipe.

☐ The cracks observed in the CPVC pipe are consistent with environmental stress cracking (ESC).

☐ Fatty acids and phthalates were identified in wash samples taken from the inside pipe surface and from the fracture surface. Lesser amounts were detected in the scrapings from the sprinkler threads and in the sprinkler thread wash samples.

☐ Fatty acids and phthalates are ingredients found in thread cutting oils and thread sealants. These chemicals have been identified as environmental stress cracking agents for CPVC.

☐ The probable source for these chemical agents is the metallic piping connected to the CPVC piping.

☐ The cracks in the piping and subsequent leaks were the result of ESC caused by a contaminant or contaminants introduced on the inside of the piping at the time of installation.

**The Underlying Action**

17.     On 07/19/2016, the Association filed a construction defect lawsuit against numerous parties involved in the construction of the condominium, including Summers, in a case styled *Latitude on the River Condo Assn., Inc. v. Allied Tube & Conduit Corp., et al*, bearing Case No. 16-18468 and pending in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida (the "Underlying Action").

18.     In its Third Amended Class Action Complaint, the Association cites another incompatibility problem associated with CPVC material.   (*See* Third Amended Complaint, attached as Exhibit "C.") The Association alleges that "[a]s early as 2007, the Defendants each knew or should have known that certain CPVC material was incompatible with certain metallic materials, including metallic ABF and ABF II pipe[.]" (*Id*., ¶4.) Despite this, the Association alleges the condominium "was constructed with incompatible ABF and CPVC material." (¶5.)

19.     The Association alleges Summers "was the fire sprinkler subcontractor that provided labor, services and materials" for the construction of the condominium, and that it "is responsible for the maintenance and inspections" of the fire sprinkler system. (¶79.)

20.     In providing, labor, services, and material in the construction of the condominium, Summers installed "Allied ABF steel piping and CPVC pipes, fittings and components manufactured by multiple manufacturers…." (¶80.)

21.     The Association alleges "Summers was to install a functioning and operational Fire Protection System at the Project, free of incompatible components and, in connection therewith, was responsible for the contract administration of its work at the Latitude Condominium. More

specifically, Summers was responsible under its contract to procure materials and equipment which were compatible with one another, and which, when put to normal use, would not cause resulting damage to one another or to the common, limited common elements of the condominium or to fixtures and personal property within the condominium units." (¶102.)

22.     The Association further alleges "CPVC is incompatible with ABF and numerous other materials and products, which causes physical damage to the CPVC." (¶526.)

23.     In Count 30 for breach of statutory warranty, the Association alleges Summers breached § 718.203(2), Fla. Stat., by constructing the condominium with "ABF and CPVC products that are incompatible with one another, which causes the CPVC components to leak and fail, the Fire Protection System not to function and causes damage and [environmental stress cracking] to the CPVC products." (¶530.A.)

24.     In Count 31 for negligence, the Association alleges Summers breached its duty to exercise reasonable care in the "design, construction, installation, oversight, maintenance and inspections" of the fire protection system, and also by concealing or mispresenting information concerning the risks "ABF pipes presented when combined with CPVC pipes[.] (¶535.)

25.     In Count 32 for violation of § 553.84, Fla. Stat., the Association alleges Summers failed to comply with "local, state and national building codes and regulations." (¶55.)[1]

## THE CHUBB POLICIES

**The WSLIC and ILU Primary Policies**

26.     WSLIC issued these primary commercial general liability policies to Summers:

□ Policy No. GLW778432 (Eff. 02/28/2004 – 02/28/2005);

□ Policy No. GLW786734 (Eff. 02/28/2005 – 09/07/2005);

---

[1] Count 32 of the Association's Third Amended Complaint begins with paragraph 51, as opposed to continuing with the numbering of the preceding paragraphs.

□ Policy No. G21981394001 (Eff. 09/07/2005 – 09/07/2006); and

□ Policy No. G22048338001 (Eff. 09/07/2006 – 09/07/2007).

27. ILU issued these primary commercial general liability policies to Summers:

□ Policy No. G27116498 001 (Eff. 01/31/2014 – 01/31/2015);

□ Policy No. G27116498 002 (Eff. 01/31/2015 – 01/31/2016); and

□ Policy No. G27116498 003 (Eff. 01/31/2016 – 01/31/2017).

28. The primary policies are referred to collectively as the "Chubb Primary Policies."

(*See* Chubb Primary Policies, attached as Composite Exhibit "D.")

29. The principal coverage form of the Chubb Primary Policies provides:[2]

**SECTION I – COVERAGES**
**COVERAGE A – BODILY INJURY AND PROPERTY**
**DAMAGE LIABILITY**

**1.    Insuring Agreement**

    **a.**    We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. …

    **b.**    This insurance applies to "bodily injury" and "property damage" only if:

        **(1)**    The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

        **(2)**    The "bodily injury" or "property damage" occurs during the policy period; and

---

[2] The WSLIC primary policies include principal Form CG 00 01 10 01, and the ILU primary policies include principal Form CG 00 01 04 013. The forms are not dissimilar for purposes here.

**(3)** Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

**c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

**d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

**(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

**(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

**(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur. …

**2.** **Exclusions**

This insurance does not apply to:

**a.** **Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property. …

**j.** **Damage To Property**

"Property damage" to: …

**(1)** Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property; …

**(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it. …

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k.      Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l.      Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m.      Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2)    A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n.**    **Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1)    "Your product";

(2)    "Your work"; or

(3)    "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it. …

## SECTION V – DEFINITIONS …

13.    "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions. …

17.    "Property damage" means:

**a.**    Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.**    Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it. …

21.    "Your product":

**a.**    Means:

(1)    Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

        **(a)**    You;

        **(b)**    Others trading under your name; or

        **(c)**    A person or organization whose business or assets you have acquired; and

    **(2)**    Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

**b.**    Includes:

    **(1)**    Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

    **(2)**    The providing of or failure to provide warnings or instructions.

**c.**    Does not include vending machines or other property rented to or located for the use of others but not sold.

**22.**    "Your work":

**a.**    Means:

    **(1)**    Work or operations performed by you or on your behalf; and

    **(2)**    Materials, parts or equipment furnished in connection with such work or operations.

**b.**    Includes:

    **(1)**    Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

    **(2)**    The providing of or failure to provide warnings or instructions. …

30.     The Chubb Primary Policies include the following Fire Sprinkler and Suppression Systems Errors & Omissions Endorsement (Form MANA 00 17 03 99):[3]

**FIRE SPRINKLER AND SUPPRESSION SYSTEMS**
**ERRORS & OMISSIONS** …

THIS ENDORSEMENT MODIFIES INSURANCE PROVIDED UNDER THE FOLLOWING:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

1.     Section I — Coverages

Insurance provided by this endorsement shall apply to:

Coverage A. "Bodily Injury" and "Property Damage" arising out of any negligent act, error or omission in the performance of "Your Work" whether performed by the insureds individually or collectively.

Damages which arise out of a single act, error or omission or any series of related acts, errors or omissions whether committed by one or more insureds will be considered a single occurrence.

This insurance does not apply to:

"Bodily Injury", "Property Damage", "Personal Injury" or "Advertising Injury" arising out of the rendering or failure to render any professional services by an engineer or architect including:

1.     The preparing, approving, or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications; and
2.     Supervisory, inspection or engineering services.

This exclusion does not apply to engineers or architects that are a named insured or an employee of the named insured, but only for acts arising out of the rendering or failure to render any professional services within the scope of their employment by you and only while performing professional services in conjunction with work you perform on fire suppression systems.

2.     Section III — Limits of Insurance

---

[3] Policy No. G27116498 001 (01/31/2014 to 01/31/2015) does not include this endorsement.

Coverage provided by this endorsement does not increase the limits of insurance of the policy.

3.      Section V — Definitions

"Your Work" is replaced by the following:

"Your Work" means:

A.      Work or operations performed by you or on your behalf as a fire sprinkler and suppression systems contractor; and

B.      Materials, parts or equipment furnished in connection with such work or operations.

"Your Work" includes but is not limited to:

A.      Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "Your Work";

B.      The providing of or failure to provide warnings or instructions;

C.      Designing, providing specifications for, fabricating, installing; and

D.      Inspection of, repair of, or servicing or testing of fire sprinkler or fire suppression systems. …

**The WSLIC Umbrella Policies**

31.     WSLIC issued an umbrella liability policy to Summers, bearing Policy No. CUW774527 and effective from 02/28/2004 to 02/28/2005. This policy was renewed by Policy No. CUW785754, effective from 02/28/2005 to 09/07/2005.

32.     The principal coverage form of the WSLIC umbrella policies provide:

**INSURING AGREEMENTS**

**I.      COVERAGE**[4]

(1)     We will pay on behalf of the "Insured" those sums in excess of the "Retained Limit" which the "Insured", by reason of liability imposed by law, or assumed by the "Insured" under contract prior

_____

[4] This provision was amended by an Amendatory Endorsement (Form M03 (3-94)).

to the "Occurrence", shall become legally obligated to pay as damages for:

(A)    "Bodily Injury" or "Property Damage" occurring during the policy period stated in Item 2 of the Declarations ("Policy Period") and caused by an "occurrence"; …

## II.    DEFENSE SETTLEMENT

(1)    We shall have the right and duty to defend any "Claim" or "Suit" seeking damages covered by the terms and conditions of this policy when:

(a)    the applicable limits of insurance of the underlying insurance policies set forth in Schedule A and to be maintained by you in accordance with Condition M of this policy (the "Underlying Insurance"), plus the applicable limits of other insurance have been exhausted by payments; or

(b)    Damages are sought for "Bodily Injury", "Property Damage", "Personal Injury", or "Advertising Injury" which are not covered by "Underlying Insurance" or other insurance. …

## IV.    DEFINITIONS …

G.    "Occurrence" means:

(1)    An accident, including continuous or repeated exposure to substantially the same general harmful conditions, that results in "Bodily Injury" or "Property Damage" that is not expected or not intended by the "Insured".

All damages that arise from continuous or repeated exposure to substantially the same general conditions are considered to arise from one "Occurrence". …

J.    "Property Damage" means:

(1)    physical injury to tangible property, including all resulting loss of use of that property (all such loss of use shall be deemed to occur at the time of the physical injury that caused it); or

(2)     loss of use of tangible property that is not physically injured (all such loss being deemed to occur at the time of the "Occurrence" that caused it). …

M.      "Underlying Insurance" means the policies listed in Schedule A – Schedule of Underlying Insurance and any other policies purchased or issued for any newly acquired or formed organization not more restrictive than the terms, conditions, endorsements, and limits of liability of the policies listed in Schedule A and to be maintained by you in accordance with Condition M of this policy.

N.      "Your Product" means:

(1)     any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

(a)     you;

(b)     others trading under your name; or

(c)     a person or organization whose business or assets you have acquired; and

(2)     containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

"Your Product" includes warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of items described in subparagraph (1) or (2) above and the providing of or failure to provide warnings or instructions.

"Your Product" does not include vending machines or other property rented to or located for the use of others, but not sold.

O.      "Your Work" means:

(1)     work or operations performed by you or on your behalf; and

(2)     materials, parts or equipment furnished in connection with such work or operations.

"Your Work" includes warranties or representations made at any time with respect to the fitness, quality, durability, performance or

use of items described in subparagraph (1) or (2) above and the providing of or failure to provide warnings or instructions. …

## EXCLUSIONS

This policy does not apply to:

A.   "Bodily Injury" or "Property Damage" expected or intended from the standpoint of the "Insured".

This Exclusion A does not apply to "Bodily Injury" resulting from the use of reasonable force to protect persons or property. …

D.   "Property Damage" to[5]

1.   Any property owned by the "Insured";

2.   Personal property in the care, custody and control of the "Insured";

3.   That particular part of real property on which the "insured" or any contractors or subcontractors working directly or indirectly on the "insured's" behalf are performing "Your Work", if the "property damage" arises out of "Your Work". …

E.   "Property Damage" to "Your Product", arising out of it or any part of it.

F.   "Property Damage" to "Your Work" arising out of it or any part of it and included in the "Products/Completed Operations Hazard".

This Exclusion F does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

G.   "Property Damage" to "Impaired Property" or property that has not been physically injured arising out of:

(1)   a defect, deficiency, inadequacy or dangerous condition in "Your Product" or "Your Work"; or

---

[5] This exclusion was amended by a Contractors Endorsement (Form M06 (10-90)).

> (2)   a delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.
>
> This Exclusion G does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "Your Product" or "Your Work" after it has been put to its intended use. …

33.   The Schedule of Underlying Insurance for each WSLIC umbrella policy identifies the corresponding WSLIC primary policy.

**The ILU Excess Policy**

34.   ILU issued an excess liability policy to Summers, bearing Policy No. G27115299 001 and effective from 01/31/2014 to 01/31/2015. The principal coverage form, Form XSC-27266 (05/09), provides in pertinent part:

**SECTION I. INSURING AGREEMENTS**

**A.   COVERAGE**

> We will pay, on your behalf, "loss" arising out of an "occurrence" but only after all "underlying insurance" has been exhausted by the payment of the limits of such insurance for covered injury or damage. If "underlying insurance" does not pay a "loss" for reasons other than the exhaustion of an aggregate limit of insurance, then we will not pay such "loss".
>
> The definitions, terms, conditions, limitations and exclusions of the first policy of "underlying insurance" apply to this coverage unless they are inconsistent with provisions of this policy or relate to premium, subrogation, any obligation to defend, the payment of expenses, amounts of limits of insurance, cancellation or any renewal agreement.[6] …

35.   The 2014/2015 primary ILU policy is identified as the underlying commercial general liability policy in the Schedule of Underlying Insurance.

---

[6]   This provision was modified by a Insuring Agreement Coverage Section Amendment endorsement (Form XSC-32991 (02/11)).

36.     The WSLIC umbrella policies and the ILU excess policy shall collectively be referred to as the "Chubb Umbrella/ Excess Policies." (*See* Chubb Umbrella/Excess Policies, attached as Composite Exhibit "E.")

37.     The Chubb Primary Policies and the Chubb Umbrella/ Excess Policies shall collectively be referred to as the "Policies."

**This Declaratory Action**

38.     Chubb is currently defending Summers against the Underlying Action under a complete reservation of rights, including that there is no coverage under the Policies and that Chubb may seek a judicial determination regarding its position. Summers accepted Chubb's reservation of rights.

39.     Summers has not, however, conceded Chubb's position that there is no coverage. To the contrary, Summers is requesting defense and indemnity without reservation. Similarly, the Association does not concede Chubb's position that there is no coverage. To the contrary, the Association believes it is entitled to coverage.

40.     Pursuant to the guidance provided by the Florida Supreme Court in *Higgins v. State Farm Fire*, 894 So. 2d 5 (Fla. 2004), it is in the best interests of not only Chubb, but also Summers and the Association, if there is a judicial determination that Summers is not entitled to coverage under the Policies. To the extent that Chubb prevails on the duty to defend, as a matter of law, it will also have no duty to indemnify. Such a determination, particularly before there is a verdict in the Underlying Action, could help promote settlement.

41.     To the extent that Summers or the Association would like to reverse course and concede with Chubb's position that there is no coverage, Chubb will drop that entity as a defendant.

**COUNT I – NO COVERAGE UNDER THE WSLIC POLICIES BECAUSE ANY
PROPERTY DAMAGE OCCURRED OUTSIDE THE POLICY PERIODS**

42.    Chubb incorporates paragraphs 1 through 41.

43.    The primary and umbrella WSLIC policies only provide coverage for property damage that occurs during the policy period.

44.    The primary WSLIC policies provide coverage from 02/28/2004 to 09/07/2007, and the umbrella WSLIC policies provide coverage from 02/28/2004 to 09/07/2005.

45.    To the extent property damage occurred after the WSLIC policies lapsed, there would be no coverage under the WSLIC policies.

46.    Chubb accordingly has no duty to defend or indemnify in the Underlying Action under the WSLIC policies.

**COUNT II – NO COVERAGE UNDER THE ILU POLICIES
BECAUSE OF PRIOR KNOWLEDGE**

47.    Chubb incorporates paragraphs 1 through 41.

48.    The primary ILU policies are triggered only if "[p]rior to the policy period, no insured … knew that the … 'property damage' had occurred, in whole or in part."

49.    The ILU primary policies provide coverage from 01/31/2014 to 01/31/2017.

50.    The excess ILU policy, in effect from 01/31/2014 to 01/31/2015, follows the form of the corresponding 2014/2015 primary ILU policy.

51.    Here, based on the Chapter 558 Notice and other evidence, Summers had knowledge of damage in the condominium as early as 09/30/2011.

52.    Consequently, Chubb has no duty to defend or indemnify in the Underlying Action under the ILU Policies.

**COUNT III – NO COVERAGE UNDER ALL THE POLICIES
FOR FAULTY WORKMANSHIP**

53.    Chubb incorporates paragraphs 1 through 41.

54.    The Policies only provide coverage for "property damage" caused by an "occurrence."

55.    The Association alleges Summers breached its duty to exercise reasonable care in the "design, construction, installation, oversight, maintenance and inspections" of the fire protection system. (Third Am. Compl., ¶535.)

56.    Faulty workmanship, however, does not constitute "property damage" caused by an "occurrence."

57.    Chubb accordingly has no duty to defend or indemnify in the Underlying Action under the Policies.

## COUNT IV – NO COVERAGE UNDER ALL THE POLICIES BASED ON THE EXPECTED OR INTENDED EXCLUSION

58.    Chubb incorporates paragraphs 1 through 41.

59.    The Polices bar coverage for property damage "expected or intended from the standpoint of the insured."

60.    The Association alleges the defendants "knew or should have known that certain CPVC material was incompatible with certain metallic materials, including metallic ABF and ABF II pipe[.]" (Third Am. Compl., ¶4.)

61.    To the extent Summers expected or intended property damage, the Expected or Intended Exclusion precludes coverage and Chubb accordingly has no duty to defend or indemnify in the Underlying Action under the Policies.

## COUNT V – NO COVERAGE UNDER ALL THE POLICIES BASED ON THE BUSINESS RISK EXCLUSIONS

62.    Chubb incorporates paragraphs 1 through 41.

63.     The Policies contain "Business Risk" exclusions that preclude coverage for damages sought for damage to Summers's product, Summers's work, property that must be restored, repaired or replaced because Summers incorrectly performed work on it, and property on which Summers is performing operations if the damage arises out of those operations.

64.     To the extent the Underlying Action seeks damages for any of these items, the Business Risk Exclusions preclude coverage and Chubb accordingly has no duty to defend or indemnify in the Underlying Action under the Policies.

## REQUESTED RELIEF

**WHEREFORE,** Chubb respectfully requests this Court:

a.      Take jurisdiction and adjudicate the rights of the parties under the Policies;

b.      Declare that Chubb has no obligation to defend Summers in the Underlying Action under the Policies;

c.      Declare that because Chubb has no obligation to defend Summers in the Underlying Action under the Policies, it also has no duty to indemnify;

d.      Award Chubb all costs it incurred to prosecute this action; and

e.      All such other relief as the Court deems just and proper under the circumstances.

Respectfully submitted,

/s/SINA BAHADORAN
**SINA BAHADORAN**
Florida Bar No. 523364
sina.bahadoran@clydeco.us
**JUNAID N. SAVANI**
Florida Bar No. 88816
junaid.savani@clydeco.us

Clyde & Co US LLP
1221 Brickell Avenue
Suite 1600
Miami, Florida 33131
T: 305.446.2646

JS 44 (Rev. 09/19)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
WESTCHESTER SURPLUS LINES INSURANCE COMPANY; ILLINOIS UNION INSURANCE COMPANY

**DEFENDANTS**
SUMMERS FIRE SPRINKLERS, INC.; LATITUDE ON THE RIVER CONDOMINIUM ASSOCIATION, INC.

**(b)** County of Residence of First Listed Plaintiff    Fulton County, Georgia
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    Medina County, Ohio
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Sina Bahadoran, Esq., Clyde & Co, 1221 Brickell Avenue, #1600, Miami, Fl 33196, Ph: 305-446-2646

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1   U.S. Government    Plaintiff

☐ 3   Federal Question
     *(U.S. Government Not a Party)*

☐ 2   U.S. Government    Defendant

☒ 4   Diversity
     *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☒ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☒ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | **SOCIAL SECURITY** | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 861 HIA (1395ff) | ☐ 485 Telephone Consumer Protection Act |
| ☐ 190 Other Contract | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 862 Black Lung (923) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | | | | ☐ 863 DIWC/DIWW (405(g)) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| | | | ☐ 791 Employee Retirement Income Security Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 896 Arbitration |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1   Original Proceeding    ☐ 2   Removed from State Court    ☐ 3   Remanded from Appellate Court    ☐ 4   Reinstated or Reopened    ☐ 5   Transferred from Another District *(specify)*    ☐ 6   Multidistrict Litigation - Transfer    ☐ 8   Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. § 2201
Brief description of cause:
Declaratory Judgment

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.     DEMAND $   75,000.00     CHECK YES only if demanded in complaint:
JURY DEMAND:   ☐ Yes   ☒ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*    JUDGE       DOCKET NUMBER

DATE
04/28/2020

SIGNATURE OF ATTORNEY OF RECORD
s/Sina Bahadoran

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

## INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)    Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

  **(b)    County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

  **(c)    Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.    Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

**III.    Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.    Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

**V.    Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statue.

**VI.    Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service

**VII.    Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.    Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.